IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BARRY E. CALHOUN and            :
TAMMY CALHOUN,
          Plaintiffs            :

          vs.                   :    CIVIL NO. 1:CV-04-1576

PRUDENTIAL GENERAL INSURANCE    :
COMPANY t/d/a PRUDENTIAL
FINANCIAL, and                  :
LIBERTY MUTUAL GROUP,
          Defendants            :

M E M O R A N D U M

I.   Introduction

        We are considering the parties' cross-motions for

summary judgment.  The Plaintiffs, Barry and Tammy Calhoun,

filed suit in state court against the Defendants, Prudential

General Insurance Company and Liberty Mutual Group.  Both

parties seek a declaratory judgment regarding the coverage

provided in the auto insurance policy issued to the Plaintiffs.

The Defendants removed the case based upon diversity

jurisdiction.

II.   Standard of Review

        Summary judgment is appropriate "if the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265, 273 (1986).  In reviewing the evidence, facts and inferences must be viewed in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 553 (1986).  Summary judgment must be entered in favor of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  475 U.S. at 586-87, 106 S. Ct. at 1356, 89 L. Ed. 2d at 552 (citations omitted).  Unsubstantiated arguments made in briefs are not considered evidence of asserted facts.  *Versarge v. Township of Clinton*, 984 F.2d 1359, 1370 (3d Cir. 1993).

III.  Facts[1]

Barry Calhoun is a trooper with the Pennsylvania State Police.  He graduated from the Pennsylvania State Police Academy on August 16, 2003, and was stationed at the Embreeville Barracks.  During his three month probationary period, Trooper Calhoun spent forty hours per week training with a senior trooper.  During this period, he drove marked State Police cruisers which are owned by the state.  There were approximately

---

[1]  The parties have submitted identical statements of material facts.

nineteen different vehicles available for use at his barracks during this time period.

On July 21, 2003, three days after his probationary period ended, Trooper Calhoun was involved in a motor vehicle accident while on patrol.  He was driving a marked State Police vehicle, which was numbered "Unit 15."  It is his belief that he had not driven that particular vehicle prior to the accident.

At the time of the accident, the Plaintiffs owned two vehicles for their personal use.  The vehicles were insured by the Defendants.  The policies provided Underinsured Motorist coverage (UIM) in the amount of $100,000 per person, $300,000 per accident. Inasmuch as UIM coverage is not provided on State Police vehicles Plaintiffs seek to recover these benefits from the policy covering their personal vehicles.

IV.   Discussion

In their motion for summary judgment, the Defendants make two arguments.  First, they contend that even though Barry Calhoun had never used "Unit 15" prior to the date of the accident, recovery of UIM benefits is barred under the regularly used, non-owned vehicle exclusion clause of the insurance policy.  Second, they argue, pursuant to the Pennsylvania Supreme Court's holding in *Burstein v. Prudential Property and Cas. Ins. Co.*, 809 A.2d 204, 570 Pa. 177 (2002), that the excusion clause does not violate public policy.

3

The Plaintiffs also make two arguments in their motion for summary judgment.  Their first argument is that they are entitled to recover under their policy because Barry Calhoun was driving his employer's fleet vehicle and *Burstein* did not contemplate this situation.  Next, they argue that because purchasing UIM coverage on State Police fleet vehicles was impossible, public policy dictates that they should be able to recover from their own insurers.

The regularly used, non-owned vehicle exclusion clause in the Plaintiffs' insurance policy reads as follows:

> [w]e will not pay for bodily injury or
> property damage, caused by anyone using a
> non-owned motor vehicle or trailer not
> insured under this part, that is furnished
> or made available for the regular use by you
> or a household resident.

(Doc. 13, Ex. B, p.9).  In *Burstein*, the Pennsylvania Supreme Court held that such exclusion clauses do not violate public policy interests.  *Burstein*, 809 A.2d at 210, 570 Pa. at 187. The court noted that "voiding the exclusion would frustrate the public policy concern for the increasing costs of automobile insurance, as the insurer would be compelled to underwrite unknown risks that it has not been compensated to insure." *Burstein*, 809 A.2d at 208, 570 Pa. at 185.  The court then stated that employees driving their employer's vehicles "should [take] affirmative steps to determine whether the employer-provided vehicle [is] insured and, if so, with what types of coverage."  *Burstein*, 809 A.2d at 209, 570 Pa. at 187.  If an

employee discovers that UIM coverage is not provided, he can (1) drive without the UIM coverage as Pennsylvania does not require it; (2) obtain UIM coverage by negotiating with the employer to have coverage purchased or, if possible, purchase the coverage on his own; or (3) refuse to drive the car.  *Burstein*, 809 A.2d at 209-10, 570 Pa. at 187.

The Defendants' first argument is that Barry Calhoun was driving a regularly used, non-owned vehicle at the time of his accident.  They contend that even though he may not have driven "Unit 15" prior to the accident, he had regular use of the numerous vehicles located at his barracks and that this satisfies the regular use requirement.  The Plaintiffs maintain that since this was the first time Barry Calhoun had used "Unit 15," the exclusion clause does not apply and that the holding in *Burstein* does not contemplate a fleet vehicle scenario.

Since the *Burstein* decision, courts that have addressed the applicability of the regularly used, non-owned vehicle exclusion clause to fleet vehicles have found that such vehicles are excluded from coverage.  *Prudential Property and Cas. Ins. Co. v. Peppelman*, 2003 U.S. Dist. LEXIS 7650 at *14 (E.D. Pa. 2003)(finding that employee was a passenger in a non-owned, regularly used vehicle when it was clear that the employee would be using an employer-owned vehicle every working day, whether it was the vehicle specifically assigned to him or another employer-owned vehicle); *Prudential Property and Cas.*

*Ins. Co. v. Hinson*, 277 F. Supp. 2d 468, 477 (E.D. Pa. 2003)(finding that an employee was a passenger in a non-owned, regularly used vehicle when one of two employer vehicles were available for his use during his work hours); *Prudential Property and Cas. Ins. Co. v. Armstrong*, 2004 WL 603416 at *5 (E.D. Pa. 2004)(finding that an employee was a passenger in a non-owned, regularly used vehicle when the employer's vehicles were available for his use even if he did not use one every day).  In these cases, the courts found that "regular use" was not limited to the actual use of the vehicle that was involved in the accident.  Rather, "regular use" meant that a vehicle was "available" for use by an employee.  *Peppelman*, 2003 U.S. Dist. LEXIS 7650 at *7-8; *Hinson*, 277 F. Supp. 2d at 474-5; *Armstrong*, 2044 WL 603416 at *2, 4; *see also Automoblie Ins. Co. of Hartford v. Curran*, 994 F. Supp. 324, 330 (E.D. Pa. 1998)("[I]t has been recognized that the test of a regular use exclusion is not use but availability for use or ownership by a member of a group who would be likely to make their cars available for each other's use.").

We find these cases to be persuasive.  In the instant case, Barry Calhoun used a State Police vehicle when he was at work.  While he may not have used the same vehicle each time he drove, it is clear that at least one of the vehicles was available for his use when he needed it.  *Hinson*, 277 F. Supp. 2d at 475.  Since the State Police vehicles were available for

Trooper Calhoun's use while he was working, the regularly used, non-owned vehicle exclusion clause bars recovery in this case.[2]

Although the Plaintiffs argue that *Burstein* does not contemplate a fleet vehicle situation, they have not cited, and we have not found, any cases to support this argument.  Further, we find no support for the contention that three options provided for employees by the *Burstein* court are foreclosed by a fleet situation.  First, Trooper Calhoun could have inquired as to the insurance coverage on State Police vehicles and then chosen to drive without UIM coverage.  With regard to the second option, there is nothing in the record to support Plaintiffs' assertion that negotiating with the State Police for UIM coverage would have been "impossible."  There is also nothing in the record to support the assertion that the Defendants would not have provided some type of coverage had the Plaintiffs inquired about their options.[3]  Finally, while it is likely that Trooper Calhoun would not be able to refuse to drive a State

---

[2] We note that although the Plaintiffs assert that the regularly used, non-owned vehicle exclusion clause is not applicable because Barry Calhoun has not previously driven "Unit 15," they provided no case law or argument to support this conclusion.

[3] The Plaintiffs have submitted a letter from Alan Hostetler, an insurance agent, which states that he is "not aware of any Insurance Carrier who would provide Under Insured or Uninsured Motorist Coverage for any individual, on a stand alone basis for a non owned vehicle under any circumstances." (Doc. 17 Ex. A).  However, this is not sufficient to show that there were absolutely no insurance options available to the Plaintiffs through the Defendants or another insurance provider.

Police vehicle while at work, the potential foreclosure of this one possibility does not negate the availability of the other two options.

The Defendant's second argument is that the regularly used, non-owned motor vehicle exclusion clause is consistent with public policy.  We must agree.  The *Burstein* court held that such clauses do not violate public policy interests. *Burstein*, 809 A.2d at 210, 570 Pa. at 187.  We reject the Plaintiffs' public policy argument because, as previously discussed, there is no evidence to support a conclusion that *Burstein* does not apply to the instant case or that the only option available to the Plaintiffs was reliance on the UIM coverage they purchased for their personal vehicles.

We will enter an appropriate order.


/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: May 5, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


BARRY E. CALHOUN and                :
TAMMY CALHOUN,
          Plaintiffs                :

          vs.                       :    CIVIL NO. 1:CV-04-1576

PRUDENTIAL GENERAL INSURANCE        :
COMPANY t/d/a PRUDENTIAL
FINANCIAL, and                      :
LIBERTY MUTUAL GROUP,
          Defendants                :


O R D E R


        AND NOW, this 5th day of May, 2005, it is ordered

that:

        1. The Defendants' motion for summary
        judgment (doc. 13) is granted.  The Clerk of
        Court shall enter judgment in favor of the
        Defendants and against the Plaintiffs on the
        Defendants' action seeking a declaratory
        judgment.

        2.  The Plaintiffs' cross-motion for
        summary judgment (doc. 16) is denied.  The
        Clerk of Court shall enter judgment against
        the Plaintiffs and in favor of the
        Defendants with respect to the Plaintiffs'
        cross-motion for summary judgment.

        3. It is the declaration of this court
        that, with regard to the accident involving
        Trooper Barry Calhoun on July 21, 2003, the
        Defendants owe no underinsured motorist
        coverage to the Plaintiffs.

        4. The Clerk of Court shall close this
        file.


                              /s/William W. Caldwell
                              William W. Caldwell
                              United States District Judge